## COYLE v. DUNCAN SPANGLER COAL CO.

(District Court, E. D. Pennsylvania. April 3, 1923.)

No. 9730.

1. **Bankruptcy ⬳293(1)—Actions by trustee not within jurisdiction of federal court.**

A federal court is without jurisdiction of a suit by a trustee to recover a debt due the bankrupt from a stranger to the bankruptcy proceedings, not arising out of a preferential, voidable, or fraudulent transfer, within Bankruptcy Act, §§ 60b, 67e, 70e (Comp. St. §§ 9644, 9651, 9654), unless there exists diversity of citizenship and the requisite jurisdictional amount is involved.

2. **Bankruptcy ⬳293(4)—Consent of defendant cannot give federal court jurisdiction of suit by trustee, not within general jurisdiction of federal courts.**

Under Bankruptcy Act, § 23b (Comp. St. § 9607), "consent of the proposed defendant" cannot give jurisdiction to a federal court of a suit by a trustee which, by reason of lack of diversity of citizenship or of amount involved, is not within the general jurisdiction of the federal courts.

3. **Courts ⬳311—Citizenship of bankrupt determines jurisdiction of federal court in suit by trustee.**

In a suit by a trustee on a cause of action vested in the bankrupt prior to bankruptcy, the citizenship of the bankrupt, and not of the trustee, controls in determining the jurisdiction of a federal court.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
288 F.—57

**4. Courts ⬅315—Unincorporated company not a "citizen of state," within meaning of Constitution.**

> An unincorporated company is not a citizen of a state, within the meaning of the Constitution, and where the jurisdiction of a federal court over a suit brought by or against such an association depends on diversity of citizenship, the question is to be determined by the citizenship of its members.

At law. Action by William Radford Coyle, trustee in bankruptcy of the Tidewater Coal Exchange, against the Duncan Spangler Coal Company. On defendant's rule for more specific statement. Action dismissed, subject to leave to plaintiff to file amended statement of claim.

F. B. Bracken, of Philadelphia, Pa., for plaintiff.

B. D. Rearick, of Philadelphia, Pa., and C. J. Reilly, of Williamsport, for defendant.

McKEEHAN, District Judge. This is an action of assumpsit, brought by William Radford Coyle, as trustee in bankruptcy of the Tidewater Coal Exchange, against the Duncan Spangler Coal Company, to recover $6,161.40, with interest, for coal loaned or advanced by the bankrupt to or for the account of the defendant. The statement of claim avers that the defendant is a citizen of Pennsylvania and that the amount in controversy exceeds $3,000. Nowhere in the pleadings is there any averment regarding the citizenship of either the plaintiff or the bankrupt. As to this, the plaintiff merely avers that the Tidewater Coal Exchange is "an unincorporated company having its principal place of business in the city, county, and state of New York, in the Southern district of New York"; that on July 27, 1921, it was adjudicated a bankrupt by the District Court of the United States for that district; and that the plaintiff was appointed trustee and is now acting as such. So the question of jurisdiction appears on the face of the pleadings, and it is the court's duty to inquire into it, regardless of whether it is suggested by the defendant.

The affairs of the Tidewater Coal Exchange have been before the federal courts several times. It was decided in Re Tidewater Coal Exchange (D. C.) 274 Fed. 1008, that the Exchange was an "unincorporated company," within the meaning of section 4b of the Bankruptcy Act (Comp. St. § 9588) so as to give the United States District Court jurisdiction of an involuntary petition against it. This judgment was affirmed in 280 Fed. 638. The structure of the Exchange and its rules regulating the keeping and closing of accounts' were examined by Judge Learned Hand in New River Collieries Co. v. Snider (D. C.) 284 Fed. 287, since affirmed, and in Coyle v. Morrisdale Coal Co. (D. C.) 284 Fed. 294, Coyle v. Archibald McNeil & Sons Co. (D. C.) 284 Fed. 298, and Coyle v. Johnstown Coal & Coke Co. (D. C.) 284 Fed. 301, Judge Hand considered various questions involved in the closing of its accounts. In none of these cases was the question of the jurisdiction of the federal courts over cases of this character suggested or considered.

The Tidewater Coal Exchange was organized in 1917 by shippers of bituminous coal to facilitate the shipment of coal for export. The coal was received by the Exchange at tidewater ports and was distributed into separate pools according to the grade, the shipper receiving the obligation of the Exchange to deliver the same quantity of coal of like pool number. He was credited with all coal received from him by the Exchange, and was debited with all coal shipped out of the Exchange for his account. Under the rules, a shipper might, with the consent of the committee of the Exchange, withdraw coal in excess of the amount of his deposits; the shipper being obligated to replace such coal in kind, though the rules further provided that, in closing accounts, overdrafts of coal should be paid for in cash at prices fixed by the executive committee of the Exchange.

The plaintiff's statement avers that the defendant's withdrawals from the Exchange exceeded its deposits, and that the balance due, determined in accordance with the rules, amounted on July 1, 1920, to $6,161.40, for the recovery of which the suit is brought.

[1] I am of opinion that the federal courts have no jurisdiction over a suit brought by a trustee in bankruptcy to recover a debt alleged to be due the bankrupt by a stranger to the bankruptcy proceedings, and not falling within section 60b, or 67e, or 70e of the Bankruptcy Act (Comp. St. §§ 9644, 9651, 9654), unless there exists diversity of citizenship and the necessary jurisdictional amount, and that in the absence of these requisites the consent of the defendant cannot confer such jurisdiction. While I propose to grant the plaintiff leave to amend, still, since my information regarding the Exchange, derived from the cases above referred to, leads me to believe that the requisite diversity of citizenship probably does not in fact exist, it may be as well, in the interest of an expeditious winding up of the Exchange's affairs, to indicate now the principles that I think would apply to any amended statement that may be filed, or to any other similar suits that may be instituted.

In regard to the point under discussion, the Bankruptcy Act of 1898 made a radical departure from the Act of 1867 (14 Stat. 517). The subject has been examined and explained at length by Mr. Justice Gray in Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, and by Mr. Justice Day in Bush v. Elliott, 202 U. S. 477, 26 Sup. Ct. 668, 50 L. Ed. 1114, and Lovell v. Newman, 227 U. S. 412, 33 Sup. Ct. 375, 57 L. Ed. 577. A brief summary of these discussions will suffice here.

Under section 1 of the Act of 1867, the original jurisdiction of the bankruptcy courts extended "to the collection of all the assets of the bankrupt," and "to all acts, matters, and things to be done under and in virtue of the bankruptcy"; and section 2, after giving the several Circuit Courts general supervision and jurisdiction of all cases and questions arising under the act, gave to the Circuit and District Courts concurrent jurisdiction "of all suits at law or in equity which may or shall be brought by the assignee in bankruptcy against any person claiming an adverse interest, or by such person against such assignee, touching any property or rights of property of said bankrupt trans-

ferable to or vested in such assignee." There was a clear distinction between jurisdiction as a court of bankruptcy and jurisdiction as an ordinary court of suits at law or in equity in reference to alleged property of the bankrupt or claims alleged to be due from or to him. Under the Act of 1867, the jurisdiction of the federal courts over the latter class of suits was upheld, not under the provisions of section 1 of that act, giving the District Court original jurisdiction of proceedings in bankruptcy, or of section 2, giving the Circuit Court supervisory jurisdiction over such proceedings, but wholly under the distinct clause of section 2 above quoted, giving the Circuit and District Courts concurrent jurisdiction of suits at law or in equity. Lathrop v. Drake, 91 U. S. 516, 23 L. Ed. 414.

Turning to the Act of 1898, section 2 (Comp. St. § 9586), which takes the place of section 1 of the earlier act, nowhere mentions civil actions at law or plenary suits in equity. True, it confers on the courts of bankruptcy power to "(7) cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided"; but, as Mr. Justice Gray points out, this is no broader than the corresponding provision of section 1 of the Act of 1867, and is controlled and limited by the concluding words "except as herein otherwise provided."

This takes us to section 23 of the Act of 1898 (Comp. St. § 9607). It is entitled "Jurisdiction of United States and State Courts," and provides:

"a. The United States Circuit Courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees, in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.

"b. Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them, if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant, *except suits for the recovery of property under section sixty, subdivision b, section sixty-seven, subdivision e, and section seventy, subdivision e.*

"c. The United States Circuit Courts shall have concurrent jurisdiction with the courts of bankruptcy, within their respective territorial limits, of the offenses enumerated in this act."

The words in italics were added by amendments in 1903 and 1910. Section 60, subdivision b (Comp. St. § 9644), makes provision for the recovery of preferences given by the bankrupt within four months before the filing of the petition; section 67, subdivision e (Comp. St. § 9651), makes provision for setting aside fraudulent conveyances and for the recovery of property so conveyed at the suit of the trustee; and section 70, subdivision e (Comp. St. § 9654), makes provision for avoidance by the trustee of any transfer by the bankrupt which a creditor might have avoided and for the recovery of such property or its value except from a bona fide holder for value; and all three of these subsections contain the provision that:

"For the purpose of such recovery any court of bankruptcy, as here-inbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

In discussing this section, Mr. Justice Day said, in Lovell v. Newman, supra:

"The cases in this court which have considered this section have determined that it was not intended to increase the jurisdiction of the United States Circuit Courts in bankruptcy matters, but rather to limit it to such suits and controversies as are within the jurisdiction given such courts by the acts creating them; that is, controversies in law and in equity with adverse claimants where the amount involved is in excess of $2,000, where diverse citizenship exists (the citizenship test being, because of the Bankruptcy Act, that of the bankrupt, and not that of the trustee), or there is a cause of action arising under the Constitution or laws of the United States."

Thus the federal courts have jurisdiction of a suit of this character to the same extent only as though bankruptcy proceedings had not been instituted and the controversy had been between the bankrupt and the defendant; but in that event diversity of citizenship and the necessary jurisdictional amount would have been necessary.

[2] The second paragraph of section 23 provides that suits may be brought by the trustee only in the courts where the bankrupt might have brought them if proceedings in bankruptcy had not been instituted, "unless by consent of the proposed defendant," with certain exceptions above referred to. The plaintiff contends that, though the defendant raised the question of jurisdiction in its rule for a more specific statement, nevertheless it had previously consented to this court's jurisdiction by entering a general appearance. But I think that the words "unless by consent of the proposed defendant," as used in section 23b, refer to cases that are within the general jurisdiction of the federal courts, albeit not within the jurisdiction of the particular court in which the suit is brought, and that they are not to be regarded as an attempt by Congress to grant to private litigants the power to confer upon the federal courts a jurisdiction which they would not otherwise possess.

This question was considered by Mr. Justice Sanford in an instructive opinion in McEldowney v. Card (C. C.) 193 Fed. 475, delivered when he was judge of the United States District Court for the Eastern District of Tennessee. He there construed section 23b as constituting merely a limitation upon the local jurisdiction of the particular court in which the suit is brought, and therefore is one that may be waived by the defendant.

I am not unmindful that a considerable body of dicta and perhaps some actual decisions can be cited in opposition to this view of the clause in question. The text-book writers are not in accord. In discussing subsection b, Collier says (12th Ed., p. 523):

"A suit for the recovery of a debt does not fall within the exceptions contained in this subsection, and if it could not have been brought by the bankrupt prior to bankruptcy in a District Court, it may not be brought therein by his trustee. Thus it will be necessary to show diversity of citizenship, the requisite amount in controversy and the other jurisdictional essentials, to establish the jurisdiction of the court. In the absence

of such jurisdictional essentials the consent of the defendant to the exercise of jurisdiction will not be effectual."

On the other hand, Remington says, in speaking of this section:

"Likewise debtors owing money to the bankrupt, or adverse parties obligated to him otherwise than by reason of property fraudulently or preferentially transferred, may confer jurisdiction on the bankruptcy court by consent." Remington on Bankruptcy (2d Ed.) § 1697.

While the two cases Remington cites give color to this statement, I do not think that they support it. One of them, Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413, really turned, I think, on the summary nature of the proceedings attempted in the District Court, though the question chiefly discussed was whether Comingor had consented. Said Mr. Chief Justice Fuller:

"*Even if Comingor could have consented to be pursued in this manner*, he did not so consent."

In the other case, In re White, 177 Fed. 195, 101 C. C. A. 364, while the opinion rests the decision, in part at least, upon the consent of Froehling and Heppe, still I doubt whether that was the question involved; for the estate's claim against Froehling and Heppe was really based on the ground that the sums paid them on account of the purchase of the restaurant constituted a preference, and thus the claim was within the exceptions mentioned in section 23b. Furthermore, where, as in the White Case, the question is one of set-off, which involves a determination of whether the set-off exists, the principle that equity will afford a complete and not a partial relief may be applicable.

While the question is not free from doubt, it seems to me that the words "unless by consent of the proposed defendant," as used in section 23b, should be construed in the light of the evident purpose of the first paragraph of the section, and in the light of the well-recognized distinction between what may be termed the general jurisdiction of the federal courts as distinguished from the local jurisdiction of a particular federal court, and I am therefore of opinion that, irrespective of the defendant's consent, diversity of citizenship and the requisite jurisdictional amount are necessary to this court's jurisdiction over such a suit as this.

The defendant's attorneys entered a general appearance on September 20, 1922, and on the following day filed a rule for a more specific statement, in which they raised the question of jurisdiction. Upon these facts, I think that, even if the defendant's consent could operate to give the court jurisdiction, it would be a harsh application of the rule regarding the effect of a general appearance to hold that this defendant has consented, and that the defendant should at least be permitted to change its appearance, by amendment, to a special appearance.

[3, 4] The right of action here asserted is one that was vested in the bankrupt prior to the bankruptcy, and does not arise out of any contract or transaction of the trustee. The citizenship of the trustee is therefore immaterial. It is the citizenship of the bankrupt that controls. McEldowney v. Card (C. C.) 193 Fed. 475; Bush v. El-

liott Car Co., 202 U. S. 477, 26 Sup. Ct. 668, 50 L. Ed. 1114. And as the Coal Administrator apparently required all coal intended for export to be consigned to the Exchange during the war, it is quite probable that the membership of the Exchange included one or more citizens of Pennsylvania. If so, then suits by the trustee for the recovery of claims of this character against citizens of this state must be brought in the state courts; for an unincorporated company is not a citizen of a state within the meaning of the Constitution, and where the jurisdiction of a federal court over a suit brought by or against such an association depends upon diversity of citizenship, the question is to be determined by the citizenship of its members. Great Southern Fire Proof Hotel Co. v. Jones, 177 U. S. 449, 20 Sup. Ct. 690, 44 L. Ed. 842; Thomas v. Board of Trustees of Ohio State University, 195 U. S. 207, 25 Sup. Ct. 24, 49 L. Ed. 160.

The remaining reasons assigned by the defendant for a more specific statement can be briefly disposed of. They are: (a) That the plaintiff's statement of claim fails to state whether certain rules of the Tidewater Coal Exchange, to which it avers the defendant assented and thereby became liable to the plaintiff in the amount claimed, are in writing; (b) that, if they are in writing, the plaintiff fails to set them forth; and (c) that the statement fails to set forth the dates and amounts of the various credits and debits of the account upon which suit is brought. These reasons are all valid under rules of practice which are too evident to call for discussion, and, indeed, this was practically conceded in the course of the argument at bar.

And now, to wit, this 3d day of April, 1923, it is ordered and decreed that leave is granted to the plaintiff to file an amended statement of claim within 15 days, and that, unless an amended statement be filed within that period, the suit shall be dismissed for want of jurisdiction.