**JIM WALTER INVESTORS, a Florida business trust**

v.

**EMPIRE–MADISON, INC., a Georgia Corporation.**

**Civ. A. No. C75–804A.**

United States District Court, N. D. Georgia, Atlanta Division.

Sept. 30, 1975.

---

426

Peyton S. Hawes, Jr., William L. Bost, Jr., of Cofer, Beauchamp & Hawes, Atlanta, Ga., for plaintiff.

Trammell Newton, of Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for defendant.

## ORDER

O'KELLEY, District Judge.

Presently before the court in this breach of contract action is the defendant's motion to dismiss, which is based upon five separate grounds: (1) failure to state a claim; (2) lack of subject matter jurisdiction; (3) lack of capacity to sue; (4) failure to join a required party; and (5) the fact that the plaintiff is not the real party in interest. Since this court concludes that the action should be dismissed for lack of subject matter jurisdiction, it is unnecessary to consider the defendant's additional contentions.

The pertinent facts upon which the court must base its decision are not in dispute. The defendant is a Georgia corporation. The plaintiff is a real estate investment trust (REIT) created by declaration of trust under the laws of the State of Florida,[1] and while all of the trustees of the plaintiff REIT are citizens of states other than Georgia, the plaintiff admits that at least one of its shareholders is a citizen of the State of Georgia.

The defendant's motion to dismiss for lack of subject matter jurisdiction places squarely before this court the question of the proper citizenship to be accorded a real estate investment trust for purposes of diversity of citizenship. 28 U. S.C. § 1332. Simply stated, if the plaintiff REIT is treated as a corporation, with citizenship in the state of incorporation or the state in which it maintains

---

1. Fla.Stat.Ann. ch. 609.

its principal place of business,[2] or if it is treated as a traditional trust, with its citizenship deemed to be that of each of its trustees,[3] then diversity exists. On the other hand, if the plaintiff REIT is classified as an unincorporated association, with its citizenship deemed to be that of each of its members,[4] then the complete diversity required by *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 14 L.Ed. 79 (1806), does not exist in this case.

The plaintiff's initial argument is that since it possesses many of the attributes of a corporation, *i. e.*, centralized control, beneficial shares, a distinct legal existence provided by its declaration of trust, and profit motivation, it should be treated as such for diversity purposes. In support of its position, plaintiff relies primarily on a case in which the Second Circuit held that a joint stock association endowed with the essential attributes of a corporation must be characterized as such for purposes of diversity of citizenship. *Mason v. American Express Co.*, 334 F.2d 392 (2d Cir. 1964). In light of the ruling by the United States Supreme Court in *United Steelworkers of America v. R. H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965), however, *Mason* seems to have doubtful precedential value. *See Baer v. United Services Automobile Association*, 503 F.2d 393 (2d Cir. 1974). *See also* Wright & Miller, *Federal Practice & Procedure* § 3630 at 848–49.

In *Bouligny*, the Court ruled that for the purpose of determining diversity of citizenship, a labor union was an unincorporated association whose citizenship was deemed to be that of each of its members. The plaintiff attempts to parry the thrust of the *Bouligny* decision, however, by contending that, in every case, the court is called upon to make an independent ad hoc determination of the treatment to be accorded to the particular entity before it and that the labor union in *Bouligny* presented special problems [5] not typical of a corporate-type entity such as plaintiff. Plaintiff then proceeds to show that a REIT is more like a corporation than a labor union is.

The difficulty with plaintiff's argument in this regard, however, is that it conflicts with the express language used by the Court in the *Bouligny* decision. Addressing the argument that the similarity between some associations and corporations ought to be a basis for extending 1332(c) to unincorporated entities, the Court in *Bouligny* stated:

> We are of the view that these arguments, however appealing, are addressed to an inappropriate forum, and that pleas for extension of the diversity jurisdiction to hitherto uncovered broad categories of litigants ought to be made to the Congress and not to the courts.

382 U.S. at 150–51, 86 S.Ct. at 275. The Court then concluded that

> [w]hether unincorporated labor unions ought to be assimilated to the status of corporations for diversity purposes, how such citizenship is to be determined, and what if any related rules ought to apply, are decisions which we believe suited to the legislative and not the judicial branch, regardless of our views as to the intrinsic merits of petitioner's argument . . . .

---

2. 28 U.S.C. § 1332(c).

3. *Bullard v. City of Cisco*, 290 U.S. 179, 54 S.Ct. 177, 78 L.Ed. 254 (1933).

4. *United Steelworkers of America v. R. H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965).

5. One such special problem noted by the Court was the "circumstance that petitioner, like other labor unions, has local as well as national organizations . . . ." 382 U.S. at 152, 86 S.Ct. at 276. The *Bouligny* Court cited these problems, however, as a reason for refusing to embark upon an ad hoc determination, not, as plaintiff contends, as a factor which contributed to the ad hoc refusal to grant corporate status to a labor union.

*Id.* at 153, 86 S.Ct. at 276. These statements unequivocally indicate rejection of an ad hoc approach to the area and the substitution of a rule which only extends the 1332(c) citizenship status to corporations, as that term is defined by state law. The strict position taken by this court is directly supported by a number of post-*Bouligny* decisions. *Baer v. United Services Automobile Association,* 503 F.2d 393 (2d Cir. 1974); *Larwin Mortgage Investors v. Riverdrive Mall, Inc.,* 392 F.Supp. 97 (S.D.Tex.1975); *Fox v. Prudent Resources Trust,* 382 F. Supp. 81 (E.D.Pa.1974). In *Baer,* the Second Circuit stated that the

> formal distinction drawn between the insurance reciprocal and the insurance corporation under state law seems to be, under [*Bouligny*], dispositive on the issue of whether the reciprocal should be considered a corporation for diversity purposes, irrespective of whether the distinction is, as a practical matter, an artificial or illogical one. The existence of the distinction under state law, and not the logic underlying that distinction, is the paramount consideration. Inasmuch as the Texas statute draws that distinction, we are constrained here to regard United as an unincorporated association.

503 F.2d at 395. Of even more persuasive effect is the fact that this court, following the strict approach of *Bouligny,* recently ruled that a real estate investment trust is not to be treated as a corporation for purposes of diversity of citizenship. *Risk v. Jones,* Civil No. 75–976A (N.D.Ga., June 18, 1975).

■ Accordingly, this court concludes that since the plaintiff, Jim Walter Investors, is not a corporation under Florida law,[6] it may not be treated as such for the purpose of determining the existence of diversity jurisdiction.

The conclusion that the plaintiff REIT is not to be considered a distinct legal personality, however, does not completely resolve the question presented. Arguing in the alternative, the plaintiff contends that even though it is not considered a corporate entity for diversity purposes, still there is diversity of citizenship in this case because a REIT is a traditional trust whose citizenship is deemed to be that of each of its trustees. *See Bullard v. City of Cisco,* 290 U.S. 179, 54 S.Ct. 177, 78 L.Ed. 254 (1933); *Mecom v. Fitzsimmons Drilling Co.,* 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931); *Dodge v. Tulleys,* 144 U.S. 451, 12 S.Ct. 728, 36 L.Ed. 501 (1892).

■ The difficulty with this argument, as defendant so aptly points out, is that the

> only resemblance plaintiff bears to an ordinary trust is the fact that the word 'trust' happens to have been chosen as the generic term to describe entities seeking tax advantages under the 'real estate investment trust' provisions of the Internal Revenue Code.

Supplemental Brief in Support of Defendant's Motion to Dismiss at 6. Plaintiff's associational characteristics include: centralized control; beneficial shares; distinct legal existence provided by its declaration of trust; limitation upon liability; profit motivation; ability of the shareholders to remove the trustees with or without cause, to merger or terminate the trust, and to freely amend the terms of the trust instrument. It is obvious that the plaintiff displays no indicia of a traditional trust.

■ The obvious objection to the analysis indulged in above, however, is its complete inconsistence with the analysis undertaken in the earlier part of this order concerning the problem of whether a REIT should be treated as a corporation for diversity purposes. The response to that objection is that the strict formalism mandated by the *Bouligny* decision is inapplicable to the problem of

6. The plaintiff was organized under the business trust provisions of Florida law, Fla. Stat.Ann. ch. 609, not the corporate provision, Fla.Stat.Ann. ch. 608.

whether a REIT is to be treated as a trust or as an unincorporated association. The citizenship of a corporation for diversity purposes is established by Congress, 28 U.S.C. § 1332(c), and the Court in *Bouligny* was unwilling to expand the type of entity eligible for that treatment. On the other hand, neither the citizenship of a trust nor the citizenship of an unincorporated association is outlined by statute. Since the fear of usurpation of Congressional power is not present, and since this area is one traditionally within the responsibility of the courts, this court concludes that it is its judicial duty to consider all of the characteristics of the entity before it in ascertaining whether that entity is to be treated as a trust or an unincorporated association for purposes of diversity of citizenship.[7]

Upon careful consideration, this court concludes that since the plaintiff REIT has no indicia of a traditional trust, it is to be treated as an unincorporated association. The court is persuaded to this decision in part by *Morrissey v. Commissioner,* 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935), in which the Court held that a REIT constituted an "association" and, therefore, should be taxed, not as a trust, but as a corporation.[8] In addition, the result is in accord with *Larwin Mortgage Investors v. Riverdrive Mall, Inc., supra* (REIT is unincorporated association for diversity purposes), and *Fox v. Prudent Resources Trust, supra* (business trust is unincorporated association for diversity purposes).

In conclusion, since the plaintiff, Jim Walter Investors, is to be treated as an unincorporated association, and since at least one of plaintiff's shareholder's citizenship is not diverse from that of the defendant, this action must be dismissed for lack of subject matter jurisdiction.

---

7. Support for this position is found in *Bullard v. City of Cisco,* 290 U.S. 179, 54 S.Ct. 177, 78 L.Ed. 254 (1933). Even though not so named, the Court characterized the plaintiffs as trustees after analyzing their powers and duties.

8. Under the revenue statutes, "[t]he term 'corporation' includes associations, joint-stock companies, and insurance companies." *See* 26 U.S.C. § 7701(a)(3).