**NATIONAL CITY BANK and Royal Scotsman Inns Corporation**

v.

**FIDELCO GROWTH INVESTORS and Latimer & Buck Advisers, Inc.**

**Civ. A. No. 75–1559.**

United States District Court, E. D. Pennsylvania.

Feb. 17, 1978.

David L. Parham, Cleveland, Ohio, Michael D. Gallagher, Philadelphia, Pa., for plaintiffs.

H. Robert Fiebach, Steven B. King, Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

National City Bank, a federally-chartered national banking association with headquarters in Ohio, and Royal Scotsman Inns Corporation, a South Carolina corporation, brought this diversity action in May of 1975, seeking (1) an order compelling specific performance of certain real estate contracts, (2) consequential and punitive damages for breach of certain contracts, and (3) compensatory and punitive damages for certain tortious conduct. The complaint names as defendants Fidelco Growth Investors (Fidelco), a common law business trust primarily engaged in the business of a real estate investment trust, and Latimer & Buck Advisers, Inc., a Pennsylvania corporation.

On October 26, 1977, a few days before a scheduled pretrial conference, Fidelco moved to dismiss the complaint under Rule 12(b)(1) on the ground that the requisite diversity of citizenship is lacking. *See generally* 28 U.S.C.A. § 1332(a) (Supp.1977). At the pretrial conference on November 3, 1977, I directed counsel to create a record establishing the citizenship of the owners of the beneficial interests in Fidelco, as well as the nature of a real estate investment trust (REIT), in order that the jurisdictional issue

might be determined prior to trial. *See* Fed.R.Civ.P. 12(d). Such record has been created and briefs submitted. Opportunity was afforded for hearing and oral argument, but the parties have opted to rely on the record and written briefs.

The issue raised by Fidelco's motion is how a federal court should determine the citizenship of a business trust for the purposes of diversity jurisdiction. Fidelco, a common law business trust, Stipulation ¶ 1, contends that it should be treated as an unincorporated association, in which event Fidelco would be a citizen of each and every state of which one or more of its members are citizens. *See, e. g., United Steelworkers v. R. H. Bouligny, Inc.,* 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965); *Chapman v. Barney,* 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889); *Carlsberg Resources Corp. v. Cambria Sav. & Loan Ass'n,* 554 F.2d 1254, 1258 & n.15 (3d Cir. 1977) (citing cases). Plaintiffs, on the other hand, argue that Fidelco should be treated as a conventional trust, in which event it would be a citizen only of those states of which one or more of its trustees are citizens. *See, e. g., Bullard v. City of Cisco,* 290 U.S. 179, 54 S.Ct. 177, 78 L.Ed. 254 (1933); *General Heat & Power Co. v. Diversified Mortgage Investors,* 552 F.2d 556, 557–58 n.1 (3d Cir. 1977); 3A Moore's Federal Practice ¶ 17.04 at p. 17–27 (2d ed. 1948). To treat Fidelco, which has shareholders in both Ohio and South Carolina, as an unincorporated association would destroy the complete diversity of citizenship required to maintain this action;[1] to treat it as a conventional trust would preserve complete diversity. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *Carlsberg Resources Corp. v. Cambria Sav. & Loan Ass'n, supra,* 554 F.2d at 1257–58.

 It may be well to note at the outset that this case does *not* present the question whether a business trust such as Fidelco may be treated as a *corporation* for the purposes of diversity jurisdiction. *See generally* 28 U.S.C. § 1332(c) (1970) ("[A] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.") That question has uniformly been answered in the negative. *E. g., Riverside Mausoleum, Inc. v. UMET Trust,* 434 F.Supp. 58, 59–60 (E.D.Pa.1977); *Lincoln Assocs., Inc. v. Great American Mortgage Investors,* 415 F.Supp. 351, 355–56 (N.D. Tex.1976); *Carey v. U. S. Indus., Inc.,* 414 F.Supp. 794 (N.D.Ill.1976); *Jim Walter Investors v. Empire-Madison, Inc.,* 401 F.Supp. 425, 427–28 (N.D.Ga.1975); *Larwin Mortgage Investors v. Riverdrive Mall, Inc.,* 392 F.Supp. 97, 98–99 (S.D.Tex.1975). When faced with that question in an earlier case, I, too, concluded that a business trust could not be treated as a corporation in determining its citizenship in a diversity case. *Fox v. Prudent Resources Trust,* 382 F.Supp. 81, 92–93 (E.D.Pa.1974). Although the plaintiffs express their displeasure with these decisions which plainly have reduced the business trust's amenability to suit in diversity cases, they do not contend that Fidelco should be treated as a corporation. Rather, they urge that it be treated as a conventional trust.

The plaintiffs raise two arguments in support of their position. First, they emphasize that at the time this action was filed, Fidelco, a common law business trust, qualified for certain favorable tax treatment as a real estate investment trust, or REIT, under sections 856–58 of the Internal Revenue Code. Stipulation ¶ 2. *See generally* I.R.C. §§ 856–58 (Supp. V 1975) (amended 1976); 26 C.F.R. §§ 1.856 to 1.858–1 (1977). To qualify as a REIT, an organization must satisfy numerous conditions; in particular, it must be managed by one or more "trustees." *See* I.R.C. § 856(a)(1) (Supp. V 1975) (amended 1976); 26 C.F.R. § 1.856–1(b)(1), (d)(1) (1977). The plaintiffs continue: "Fidelco, having qualified as a trust under a federal statute in-

---

**1.** Although diversity of citizenship does exist between the plaintiffs and defendant Latimer & Buck Advisers, Inc., I have assumed, from their failure to point this out, that the plaintiffs regard Fidelco as an indispensable party under Rule 19(a) and that they do not intend to pursue this action with Latimer & Buck as the sole defendant.

tended to supply tax relief to such entities engaged in real estate transactions, should not now be treated by a federal court as something other than a trust for purposes of determining its citizenship." Memorandum of Law on Diversity Jurisdiction (Document No. 70) at 5–6.

█ This argument, however, sweeps too broadly. That an organization qualifies as a REIT is undoubtedly relevant to, but scarcely conclusive on, the question whether it should be treated as a conventional trust. *See Larwin Mortgage Investors v. Riverdrive Mall, Inc., supra,* 392 F.Supp. at 101. The latter question must be determined by assessing the organization's "intrinsic nature and purpose . . . as a business enterprise," *Lincoln Assocs., Inc. v. Great American Mortgage Investors, supra,* 415 F.Supp. at 354, and the organization's REIT status is but a single fact to be considered in that evaluation.[2]

The plaintiffs' second argument seemingly acknowledges that a business trust's citizenship cannot be determined solely on the basis of its REIT status. This argument, in essence, is that "reality requires recognition of a business trust as a citizen solely of the states where its trustees reside." Brief in Opposition to Defendants' Motion (Document No. 66) at 5. I believe the following brief discussion will demonstrate that if reality is the touchstone, Fidelco, like most business trusts, should be treated as an unincorporated association rather than as a conventional trust.

The business trust, to begin with

"is a form of business organization . . consisting essentially of an arrangement whereby property is conveyed to trustees, in accordance with the terms of an instrument of trust, to be held and managed for the benefit of such persons as may from time to time be the holders of

transferable certificates issued by the trustees showing the shares into which the beneficial interest in the property is divided. These certificates, which resemble certificates for shares of stock in a corporation and are issued and transferred in like manner, entitle the holders to share ratably in the income of the property, and, upon termination of the trust, in the proceeds."

*Hecht v. Malley,* 265 U.S. 144, 146–47, 44 S.Ct. 462, 463, 68 L.Ed. 949 (1924) (footnote omitted). In *Morrissey v. Commissioner,* 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935),[3] Chief Justice Hughes, writing for a unanimous Court, distinguished the business trust from the conventional trust:

"In what are called 'business trusts' the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains. Thus a trust may be created as a convenient method by which persons become associated for dealings in real estate, the development of tracts of land, the construction of improvements, and the purchase, management and sale of properties; or for dealings in securities or other personal property; or for the production, or manufacture, and sale of commodities; or for commerce, or other sorts of business; where those who become beneficially interested, either by joining in the plan at the outset, or by later participation according to the terms of the arrangement, seek to share the advantages of a union of their interests in the common enterprise." 296 U.S. at 357, 56 S.Ct. at 295.

Later on in the *Morrissey* opinion, Chief Justice Hughes examined the similarities between the business trust and the corporation:

---

**2.** Some of the policy considerations underlying favorable tax treatment of REITs are outlined in H.R.Rep.No.94–658, 94th Cong., 1st Sess. 353–56 (1975), *reprinted in* [1976] U.S.Code Cong. & Admin.News 2897, 3249–52.

**3.** Plaintiffs endeavor to avoid *Morrissey* by characterizing it as "an old tax decision."

Brief in Opposition (Document No. 66) at 4. Their motion papers, however, offer no alternative analysis of the business trust. Suffice it to say that, in my view, the *Morrissey* analysis is no less pertinent to this case for having been enunciated in "an old tax decision."

"What, then, are the salient features of a trust—when created and maintained as a medium for the carrying on of a business enterprise and sharing its gains—which may be regarded as making it analogous to a corporate organization? A corporation, as an entity, holds the title to the property embarked in the corporate undertaking. Trustees, as a continuing body with provision for succession, may afford a corresponding advantage during the existence of the trust. Corporate organization furnishes the opportunity for a centralized management through representatives of the members of the corporation. The designation of trustees, who are charged with the conduct of an enterprise,—who act 'in much the same manner as directors'—may provide a similar scheme, with corresponding effectiveness. Whether the trustees are named in the trust instrument with power to select successors, so as to constitute a self-perpetuating body, or are selected by, or with the advice of, those beneficially interested in the undertaking, centralization of management analogous to that of corporate activities may be achieved. An enterprise carried on by means of a trust may be secure from termination or interruption by the death of owners of beneficial interests and in this respect their interests are distinguished from those of partners and are akin to the interests of members of a corporation. And the trust type of organization facilitates, as does corporate organization, the transfer of beneficial interests without affecting the continuity of the enterprise, and also the introduction of large numbers of participants. The trust method also permits the limitation of the personal liability of participants to the property embarked in the undertaking." 296 U.S. at 359, 56 S.Ct. at 296.

It is readily apparent that Fidelco conforms to Chief Justice Hughes' sketch of the business trust. Fidelco was organized for the purpose of investing in long-term mortgage loans and other real estate finance transactions. Declaration of Trust (Document No. 72) §§ 1.3, 5.1, 5.2. Although its 1,500,000 outstanding shares are held by some 4,600 persons throughout the country, Stipulation ¶ 5, legal ownership of the trust estate is vested exclusively in Fidelco's trustees. Declaration of Trust § 6.2. These trustees have unfettered authority over Fidelco's business and affairs. *Id.* §§ 3.1, 3.2(a)–(z). Should a shareholder die, the trust "shall not dissolve or terminate." *Id.* § 6.3. Similarly, transfers of shares do not affect the continuity of Fidelco's operations. *Id.* § 6.4. Finally, shareholders are deliberately shielded from personal liability in matters relating to the trust; indeed, they are entitled to "pro rata indemnity" from the trust estate if such liability is nonetheless imposed. *Id.* § 7.2.

■ It is also readily apparent that business trusts—"those trusts which have the distinctive feature of being created to enable the participants to carry on a business and divide the gains which accrue from their common undertaking" [4]—have little in common with conventional trusts. Professor Scott, in his six-volume treatise on trusts, scarcely mentions business trusts except to note in passing that they "[have] been largely used as a substitute for incorporation." 1 A. Scott, Trusts § 1 at 4–5 (3d ed. 1967). Another writer states that business trusts "are sort of a hybrid form of organization, partaking in some respects the nature of a corporation and in other respects that of a partnership." 16A W. Fletcher, Cyclopedia of the Law of Private Corporations § 8229 at 548–49 (1962) (footnote omitted). In view of the significant differences between the business trust and the conventional trust—differences both in purpose and in structure—I conclude that Fidelco cannot be treated as a conventional trust, and that it must therefore be treated as an unincorporated association.

■ Plaintiffs place great emphasis on the trustees' extensive control over Fidelco's assets. This, they contend, makes Fidelco a conventional trust, rather than an

4. *Morrissey v. Commissioner, supra,* 296 U.S. at 360, 56 S.Ct. at 296.

unincorporated association such as a partnership. I cannot agree. True, under the general rule, the degree of control vested in the trustees largely determines whether an entity will be treated as trust or partnership *when personal liability is sought to be imposed on the shareholders. See, e. g., Hecht v. Malley, supra*, 265 U.S. at 147, 44 S.Ct. 462 (discussing Massachusetts decisions); 16A W. Fletcher, Cyclopedia of the Law of Private Corporations §§ 8230 at 554–55, 8261 (1962 & Supp. 1977). The issue in this case is entirely different. It is whether a business trust sufficiently resembles a conventional trust to be accorded like treatment in the determination of its citizenship for diversity purposes. Thus, as was the case with Fidelco's REIT status, the control vested in the trustees does not, without more, require that Fidelco be treated as a trust. Nor does Fidelco's REIT status, when taken together with the trustees' extensive control over its affairs, require that Fidelco be viewed as a trust. *Both characteristics evidence some similarity between Fidelco and the conventional trust, but, in my view, this similarity is largely offset by the several dissimilarities* referred to earlier.

In summary, Fidelco must be treated as a citizen of both Ohio and South Carolina, since it has shareholders in both those states. Affidavit of H. J. Garvin. Inasmuch as the plaintiffs are citizens of Ohio and South Carolina, complete diversity is lacking, *see* note 1, *supra*, and the complaint must be dismissed for want of subject-matter jurisdiction.